IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ADAM KERR, as Administrator          )
And Personal Representative          )
of the Estate of Cameron             )
Omar Robertson,                      )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )     1:23-cv-961
                                     )
INGERSOLL-RAND INDUSTRIAL            )
U.S., INC., SATURN FREIGHT           )
SYSTEMS, INC., A TIMELY              )
DELIVERY SERVICE, LLC,               )
GLOBAL 1 SERVICES, LLC and           )
OMAR SELESE ROBERTSON,               )
                                     )
          Defendants.                )

<u>**MEMORANDUM OPINION AND ORDER**</u>

**OSTEEN, JR., District Judge**

Before this court is Plaintiff's Motion to Remand to State Court, (Doc. 24). For the reasons stated herein, Plaintiff's motion will be granted.

**I.   <u>FACTUAL BACKGROUND</u>**

Plaintiff's claims for wrongful death arise out of the death of six-year-old Cameron Omar Robertson ("Cameron"). (Doc. 1-1 ¶¶ 23, 26). Plaintiff alleges that the five named Defendants all played a role in Cameron's death. (<u>Id.</u> ¶ 27.) A concise recitation of the facts is as follows.

On or around September 8, 2021, A Timely Delivery, LLC ("ATD"), entered into a contract with Global 1 Services, LLC ("Global 1"), (Id. ¶ 13). According to Plaintiff, pursuant to this contract, Global 1 agreed to transport loads for ATD and ATD agreed to lease to Global 1 a 2017 Nissan NV 2500 van and a driver, Omar Selese Robertson ("Robertson"). (Doc. 1-1 ¶¶ 13, 15.)[1] Further, as alleged by Plaintiff, pursuant to this contract, ATD "exercised control over the method and manner of Global 1 and Robertson's work." (Id. ¶ 14.)[2]

On or around September 28, 2021, Ingersoll-Rand Industrial U.S., Inc. ("Ingersoll-Rand") hired Saturn Freight Systems, Inc. ("Saturn") to transport a Barrel Water Heater ("the load") from Ingersoll-Rand's facility in Mocksville, North Carolina to Rome, Georgia. (Id. ¶ 17.)[3] Saturn, in turn, hired ATD to transport the load on its behalf. (Id. ¶ 18.) ATD then assigned the transportation of the load to Global 1 and Robertson. (Id. ¶ 20.) Later that day, Robertson picked up the load from

_____

[1] ATD and Global 1 admit that they entered into this contract, but both state that the content of the contract "speaks for itself." (Doc. 14 ¶¶ 13, 15; Doc. 25 ¶ 13.)

[2] ATD expressly denies this allegation, (Doc. 14 ¶ 14), however Global 1 and Robertson admit it, (Doc. 25 ¶ 14).

[3] Although Ingersoll-Rand admits that it has hired Saturn as a freight forwarder, it denies the allegations as to this specific load "for lack of knowledge or information sufficient to form a belief about the truth of the allegations." (Doc. 23 ¶ 17.)

Ingersoll-Rand's facility, where Ingersoll-Rand's agents placed the load in the cargo area of the 2017 Nissan Van leased to Global 1 by ATD, allegedly without using any devices to secure the load. (Id. ¶ 21-22).[4] As alleged by Plaintiff, while Robertson drove the van, his six-year-old son rode in the cargo area, where the load was stored. (Id. ¶ 23.) Sometime after 7:00 p.m. on September 28, Robertson navigated a turn and the unsecured load shifted and crushed Cameron, "causing a long skull fracture and a brain laceration." (Id. ¶ 24.) Cameron ultimately died from his injuries at 2:31 a.m. on September 29, 2021. (Id. ¶ 26.)

## II.  PROCEDURAL HISTORY

Plaintiff initially filed his complaint in Guilford County Superior Court on September 11, 2023. (See Complaint ("Compl.") (Doc. 1-1) at 1.)[5] Defendants ATD and Saturn removed the case to federal court on November 7, 2023, based upon 28 U.S.C. § 1441(a), arguing that "Plaintiff's Complaint is brought pursuant to various alleged violations of the Federal Motor Carrier

---

[4] These facts are denied by Ingersoll-Rand. (Doc. 23 ¶¶ 21-22.) Additionally, ATD denies that Defendant Robertson "was and [sic] agent and/or acting in the scope of his agency, servancy, and/or employment with [ATD] at any time relevant hereto." (Doc. 14 ¶ 21.)

[5] All citations in this Memorandum Opinion and Order to documents filed within the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

- 3 -

Safety Act." (Notice of Removal (Doc. 1) at 2.) Defendant Ingersoll-Rand consented to the removal on November 9, 2023. (Def. Ingersoll-Rand's Notice of Consent to Removal (Doc. 10).) Defendants Global 1 and Robertson consented to removal on November 17, 2023. (Defs. Global 1 and Robertson's Notice of Consent to Removal (Doc. 20).)

All Defendants timely filed an answer to Plaintiff's complaint. Defendants ATD and Saturn filed their respective answers on November 14, 2023. (Def. ATD's Answer (Doc. 14); Def. Saturn's Answer (Doc. 15).) Defendant Ingersoll-Rand filed its answer on November 21, 2023. (Def. Ingersoll-Rand's Answer to Pl.'s First Compl. and Demand for Jury Tr. ("Def. Ingersoll-Rand's Answer") (Doc. 23).) Defendants Global 1 and Robertson filed a joint answer on November 29, 2023. (Answer of Global 1 and Robertson ("Defs. Global 1 and Robertson's Answer") (Doc. 25).) Plaintiff responded to Defendant Ingersoll-Rand's Answer on December 7, 2023. (Pl.'s Resp. to Def. Ingersoll-Rand's Plea of Contributory Negligence ("Pl.'s Resp.") (Doc. 26).)

On November 22, 2023, Plaintiff filed a Motion to Remand to State Court, (Pl.'s Mot. to Remand to State Ct. ("Pl.'s Mot.") (Doc. 24)), and a supporting memorandum of law, (Doc. 24-1; Pl.'s Mem. of Law in Supp. of Mot. to Remand to State Ct. ("Pl.'s Mem.") (Doc. 28).) Defendants Saturn and ATD responded

- 4 -

in opposition on December 13, 2023, (Saturn and ATD's Resp. and
Mem. of Law in Opp'n to Pl.'s Mot. to Remand ("Defs. Saturn and
ATD's Resp.") (Doc. 29)), as did Defendant Ingersoll-Rand, (Def.
Ingersoll-Rand's Opp'n to Pl.'s Mot. to Remand to State Ct.
("Def. Ingersoll-Rand's Opp'n") (Doc. 30).) Plaintiff replied on
December 27, 2023. (Pl.'s Reply Br. in Resp. to Defs.'s Opp'n
Brs. ("Pl.'s Reply") (Doc. 31).)

III. **ANALYSIS**

    28 U.S.C. § 1441(a) permits a defendant in a civil action
to remove an action from state court to federal court if the
federal court has original jurisdiction. 28 U.S.C. § 1441(a).
Given the inherent federalism concerns with removal
jurisdiction, "[courts] must strictly construe [it]." Mulcahey
v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir.
1994).

    Federal district courts have jurisdiction of "all civil
actions arising under the Constitution, laws, or treaties of the
United States." 28 U.S.C. § 1331. The paradigm for "federal
question" or "arising under federal law" jurisdiction is when
federal law supplies the cause of action. Burrell v. Bayer
Corp., 918 F.3d 372, 379-80 (4th Cir. 2019). However, there is a
"'slim category' of cases . . . in which state law supplies the
cause of action but federal courts have jurisdiction under §

- 5 -

1331 because 'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" <u>Mayor & City Council of Balt. v. BP P.L.C.</u>, 31 F.4th 178, 208 (4th Cir. 2022) (citation omitted).

Defendants removed the action based on federal question jurisdiction because they argue Plaintiff's complaint is brought "pursuant to various alleged violations of the Federal Motor Carrier Safety Act, 49 U.S.C. § 30101 – § 30170 <u>et</u> <u>seq.</u> ("FMCSA")."[6] (Notice of Removal (Doc. 1) at 2.) Plaintiff does not assert a federal cause of action under FMCSA, but rather asserts thirteen claims for relief under North Carolina's wrongful death statute, N.C. Gen. Stat. § 28A-18-2. (<u>See</u> <u>generally</u> Compl. (Doc. 1-1).) Accordingly, for federal jurisdiction to be appropriate, this case must be within the "slim category" of cases where a state law cause of action

---

[6] The popular name "Federal Motor Carrier Safety Act" or "FMCSA" is frequently used by courts to refer to portions of Title 49, Subtitle VI, of the United States Code. 49 U.S.C. §§ 30101–33118; <u>see, e.g.,</u> <u>Soo Line R.R. Co. v. Werner Enters.</u>, 825 F.3d 413, 420 (8th Cir. 2016); <u>Black v. Dixie Consumer Prods. LLC</u>, 516 Fed. App'x 412, 413 (6th Cir. 2013); <u>Fuller v. Biggs</u>, 532 F. Supp. 3d 371, 375 n.4 (N.D. Tex. 2021); <u>N.C. Motorcoach Ass'n v. Guilford Cnty. Bd. of Educ.</u>, 315 F. Supp. 2d 784, 801 (M.D.N.C. 2004); <u>but see</u> <u>Geier v. Am. Honda Motor Co., Inc.</u>, 529 U.S. 861, 864–65 (referring to 49 U.S.C. § 30101 <u>et seq.</u> as the "National Traffic and Motor Vehicle Safety Act of 1966"); <u>Williamson v. Mazda Motor of Am., Inc.</u>, 562 U.S. 323, 337–339 (Sotomayor, J., concurring) (same).

requires the court to resolve a "substantial question of federal law." <u>Mayor & City Council of Balt.</u>, 31 F.4th at 208.

### A.    **Substantial Federal Question Jurisdiction**

The Supreme Court in <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u> provided a four-part test to identify when state law causes of action warrant federal jurisdiction: "federal jurisdiction over a state law claim will lie if a federal issue is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." <u>Gunn v. Minton</u>, 568 U.S. 251, 258 (2013) (summarizing <u>Grable</u>, 545 U.S. 308, 313–314 (2005)). "Where all four of these requirements are met, . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." <u>Id.</u>

### 1.    **Plaintiff's Claim Against Defendant Ingersoll-Rand**

Plaintiff alleges one claim against Defendant Ingersoll-Rand — a wrongful death claim under North Carolina law, N.C. Gen. Stat. § 28A-18-2. (Compl. (Doc. 1-1) ¶ 28–32.) That claim alleges negligence based on Defendant's alleged breach of duty

by "Improper Loading and Securement." (Id.) Specifically, Plaintiff asserts that "Defendant Ingersoll-Rand, acting as a Shipper under the Federal Motor Carrier Safety Act and Regulations, had a duty to the public, including to Cameron Omar Robertson, to properly inspect and secure the load when placing it in the 2017 Nissan NV 2500 Van operated by Defendant Global 1 Services and Defendant Robertson." (Id. ¶ 29.) According to Plaintiff, Defendant Ingersoll-Rand was negligent by "[l]oading the Barrel Water Heater in an improper manner," "[f]ailing to properly secure the Barrel Water Heater," "[v]iolating Federal Standards under the Federal Motor Carrier Safety Act and Regulations," "[v]iolating industry standards for the securement of the load," and "[a]cting negligently and grossly negligent in other ways to be proven at trial." (Id. ¶ 30.) Defendant Ingersoll-Rand argues that this claim requires this court to resolve a federal question: what duty, if any, Ingersoll-Rand owed to the public as defined by FMCSA and its associated regulations, the Federal Motor Carrier Safety Regulations ("FMCSR"). (Def. Ingersoll-Rand's Opp'n (Doc. 30) at 4–5.)

Plaintiff's state law wrongful death claim against Defendant Ingersoll-Rand does not merit federal question jurisdiction. To the extent the claim raises the question of Ingersoll-Rand's duty under FMCSA or FMCSR, the question is not

- 8 -

substantial and hearing it would disrupt the federal-state judicial balance approved by Congress.

### i. <u>Is a Federal Question Necessarily Raised?</u>

The gateway question under the <u>Grable</u> four-part inquiry is whether Plaintiff's state law cause of action necessarily depends upon the resolution of a federal question. <u>Gunn</u>, 568 U.S. at 258. Stated more directly, "[a] federal question is 'necessarily raised' . . . only if it is a 'necessary element of one of the well-pleaded state claims.'" <u>Burrell</u>, 918 F.3d at 381 (citation omitted). This inquiry is limited to the four corners of the complaint — a court may only consider "the plaintiff's statement of his own claim." <u>Id.</u>

The necessary elements of wrongful death under North Carolina law are "negligence and a death as a direct and proximate result." <u>Udzinski v. Lovin</u>, 159 N.C. App. 272, 275 (2003). North Carolina negligence, in turn, requires the plaintiff to show "(1) the defendant owed the plaintiff a duty of care; (2) the defendant's conduct breached that duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) damages resulted from the injury." <u>Parker v. Town of Erwin</u>, 243 N.C. App. 84, 110 (2015) (citation omitted).

Defendant Ingersoll-Rand argues that federal law is a necessary element of this state law claim, because the claim

"turns on an alleged breach of duties under [FMCSA] and [FMCSR]"
and therefore "Ingersoll-Rand's liability depends entirely on
applying a federal statute." (Def. Ingersoll-Rand's Opp'n (Doc.
30) at 1–2.) Plaintiff argues that its claim is not premised
solely on federal law, but rather "also allege[s] separate and
independent violations of common-law negligence standards."
(Pl.'s Mem. (Doc. 28) at 4.) According to Plaintiff, his
invocation of common law in his Complaint is clear, because "of
the five (5) breaches of duty alleged . . . only one breach
references the FMCSA standards and the other alleged breaches
involve general common law duties." (Pl.'s Reply (Doc. 31) at
9.)[7]

Defendant Ingersoll-Rand argues that Plaintiff has only
raised these common law negligence theories in later briefing
and thus they may not be considered by this court. (See Def.
Ingersoll-Rand's Opp'n (Doc. 30) at 5 n.2.) Ingersoll-Rand is
correct that this court's analysis of federal question
jurisdiction is restrained to the face of a plaintiff's
complaint. See Pressl v. Appalachian Power Co., 842 F.3d 299,
302 (4th Cir. 2016). However, it is not clear from the face of

---

[7] As noted by Plaintiff, North Carolina has recognized that
a shipper has "the general duty so to conduct its business as to
not negligently injure another by an agency set in operation by
it." Yandell v. Nat'l Fireproofing Corp., 239 N.C. 1, 7 (1953));
(Pl.'s Reply (Doc. 31) at 10).

Plaintiff's complaint whether the allegation that "Defendant Ingersoll-Rand, acting as a Shipper under [FMCSA and FMCSR], had a duty to the public," was intended to exclusively invoke a duty created by federal law, or whether Plaintiff was merely identifying Ingersoll-Rand's status within a federal scheme but relying upon a duty established by North Carolina common law. (Compl. (Doc. 1-1) ¶ 29.) If Plaintiff specifically asserted only a federal law duty, a federal question would necessarily be raised. If, however, Plaintiff's allegation is understood to only assert a state law duty, then a federal question is <u>not</u> necessarily raised. And if it is interpreted to assert duty arising from both federal law <u>and</u> state law, a federal question is similarly not necessarily raised. <u>See</u> <u>Burrell</u>, 918 F.3d at 383 ("[S]o long as 'even one theory' for each of [the plaintiff's] claims does <u>not</u> require 'interpretation of federal law,' resolution of the federal-law question is not necessary to the disposition of their case.") (citation omitted).

All of the aforementioned interpretations of Plaintiff's Complaint have merit. On the one hand, Plaintiff specifically referred to FMCSA and FMCSR when describing Ingersoll's duty. (<u>See</u> Compl. (Doc. 1-1) ¶ 29.) On the other hand, in the subsequent paragraph of the Complaint, Plaintiff alleges that Defendant breached its duty in a variety of ways — only one of

- 11 -

which referenced FMCSA and FMCSR. (See id. ¶ 30.) Ultimately, this court need not resolve whether a federal question is necessarily raised, because even assuming the question of Ingersoll-Rand's duty under FMCSA and FMSCR is necessarily raised, it fails to satisfy the third and fourth Grable factors.

### ii. Is the Federal Question Actually Disputed?

Assuming the federal question of Ingersoll-Rand's duty under FMCSA/FMCSR is necessarily raised, the issue is also "actually disputed" because the parties disagree about the scope of the duty Ingersoll-Rand owed to Plaintiff. (See Compl. (Doc. 1-1) ¶ 29 ("Defendant Ingersoll-Rand . . . had a duty to the public")); (Def. Ingersoll-Rand's Answer (Doc. 23) ¶¶ 29-30 (denying existence of duty and denying breach of duty); see Vlaming v. W. Point Sch. Bd., 480 F. Supp. 3d 711, 718 (E.D. Va. 2020) ("Practically speaking, if a federal issue does exist, it is actually disputed.") (internal quotation marks and citation omitted).

### iii. Is the Federal Question Substantial and Would it Disrupt the Federal-State Division of Judicial Labor?

The third and fourth Grable factors are interrelated in this case, so this court will address them in tandem. The third factor asks whether the federal question is "substantial" such

that it is important to the "federal system as a whole." <u>Gunn</u>, 568 U.S. at 260. A substantial federal question "generally will involve a 'pure issue of law,' rather than being 'fact-bound and situation specific.'" <u>Burrell</u>, 918 F.3d at 385 (quoting <u>Empire Healthchoice Assurance, Inc. v. McVeigh</u>, 546 U.S. 677, 700-01 (2006)). "Substantial" questions of federal law usually require a court to evaluate the constitutionality or construction of a federal statute, involve topics that the federal government has a strong interest in having resolved in a federal forum, and are "important . . . to the federal system as a whole, and not just to the particular parties in the immediate suit." <u>Id.</u> at 384-86. (internal quotation marks and citation omitted).

The fourth Grable factor asks if federal adjudication of the issue would "disturb[] any congressionally approved balance of federal and state judicial responsibilities." <u>Grable</u>, 545 U.S. at 314. This factor requires federal courts to carefully consider "congressional intent, judicial power, and the federal system." <u>Id.</u> at 317 (quoting <u>Merrell Dow Pharms. Inc. v. Thompson</u>, 478 U.S. 804, 810 (1986)). In doing so, courts should consider whether Congress provided a federal cause of action for the issue and whether permitting federal jurisdiction would "materially affect, or threaten to affect, the normal currents of litigation." <u>Grable</u>, 545 U.S. at 319. Further, "a federal

- 13 -

court must ensure that it gives leeway to States in areas where they possess 'special responsibilit[ies].'" Mayor & City Council of Balt., 31 F.4th at 209 (citation omitted). Courts should thus be wary of finding federal jurisdiction where a federal issue is merely an element of a "garden variety state tort law" action. Burrell, 918 F.3d at 385 (quoting Grable, 545 U.S. at 318–319).

Although Merrell Dow was decided before Grable, the analysis in Merrell Dow is persuasive here as to factors three and four. In Merrell Dow, the plaintiffs alleged that the defendants were negligent because they misbranded a drug in violation of federal law. 478 U.S. at 805. Similarly to this case, the plaintiffs alleged the breach of a federal duty within their state law negligence action. The Court held the case did not present a substantial federal question because Congress did not provide a private cause of action for this breach of federal duty and thus adjudicating the issue in a federal forum, "as an element of the state tort" would not "serve congressional purposes and the federal system." Id. at 814. Grable subsequently clarified Merrell Dow, explaining that the absence of a federal cause of action is not dispositive to the federal question inquiry, but remains relevant to factors three and four: substantiality and congressional intent regarding the balance of judicial responsibility. Grable, 545 U.S. at 317–18.

- 14 -

"The Court [in Merrell Dow] saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues." Id. at 318.

Here, Grable's construction of Merrell Dow is controlling. Plaintiff's state law tort claim of wrongful death includes, as an element, an alleged breach of a federal duty under FMCSA and FMCSR. (Compl. (Doc. 1-1) ¶ 29.) Just as federal law did not provide a cause of action in Merrell Dow, the vast majority of courts who have considered the issue have held that there is no cause of action for personal injury under FMCSA or its associated regulations. See Bales v. Green, No. 16-cv-106, 2018 WL 1144980, at *2 (N.D. Okla. Mar. 2, 2018) (collecting cases). Further, plaintiffs "commonly incorporate an alleged violation of federal standards into 'garden variety state tort law' complaints regarding federally regulated products." Burrell, 918 F.3d at 385. Although Merrell Dow dealt with the expansively regulated field of pharmaceuticals, the transportation industry is also highly regulated, and, as a result, Merrell Dow and Grable's concern about the "potentially enormous shift of

- 15 -

traditionally state cases into federal courts" is similarly implicated here. Grable, 545 U.S. at 319.

Additionally, FMCSR explicitly states that "[e]xcept as otherwise specifically indicated, [FMCSR] is not intended to preclude States or subdivisions thereof from establishing or enforcing State or local laws relating to safety, the compliance with which would not prevent full compliance with these regulations by the person subject thereto." 49 C.F.R. § 390.9. In other words, FMCSR only sets "minimum safety standards for commercial motor vehicles." 49 U.S.C. § 31136(a). This deliberate choice sheds light on congressional intent regarding the balance of judicial responsibilities — by setting only minimum standards and permitting states to continue enforcing their own safety laws, it is clear that Congress did not believe a federal forum was necessary just because FMCSRs were implicated.[8]

---

[8] North Carolina has complied with these minimum standards by expressly incorporating FMCSR by reference into its own regulations. See Hensley v. Nat'l Freight Transp., Inc., 193 N.C. App. 561, 564 (2008); 14B N.C. Admin. Code 07C.0101 (2018). Accordingly, as Plaintiff notes, the FMCSRs "do reflect conduct that must be followed under State law." (Pl.'s Mem. (Doc. 24) at 7.) Because the FMCSR are embedded within North Carolina law, holding that invocation of FMCSR could transform a state law claim into a federal question would contravene "the state's strong interest in developing its own personal injury doctrine without interference by federal courts." Fochtman v. Rhino Energy, LLC, No. 13-104, 2013 WL 5701468, at *2 (E.D. Ky. Oct. 17, 2013.)

- 16 -

Finally, as explained in Grable, "Merrell Dow thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law 'solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence] . . . under state law." Grable, 545 U.S. at 319 (quoting Merrell Dow, 478 U.S. at 811-812). Determining the scope of duty under FMSCA may resemble the kind of "pure issue of law" that can constitute a substantial federal question. Burrell, 918 F.3d at 385. However, in light of Merrell Dow and Grable, the absence of a private cause of action under FMCSA, the fact this claim is brought pursuant to state tort law, and the fact that FMCSA and FMCSR expressly permit states to continue enforcing their own motor vehicle safety laws all lead this court to find that, in this case, a federal forum is not warranted.[9]

---

[9] Other courts have also held that state-law negligence claims implicating FMCSA/FMCSR duties do not warrant federal jurisdiction and this court finds the reasoning persuasive. See Hicks v. New Millenium Building Sys., LLC., No. 24-cv-164, 2024 WL 4234995, at *3 (D. Minn. Sept. 17, 2024) (collecting cases); but see Tinsley v. Barney, No. 14-0100, 2014 WL 1778418, at *2 (S.D. Ill. May 5, 2014) (holding that Plaintiff's alleged violations of FMCSR warranted federal question jurisdiction, "albeit slim[ly].")

Case 1:23-cv-00961-WO-JLW   Document 32   Filed 01/06/25   Page 17 of 24

###### 2.  **Plaintiff's Claims against Saturn and ATD**

Defendants Saturn and ATD have jointly responded in opposition to Plaintiff's motion to remand and this court address Plaintiff's claims against both. Plaintiff asserts two claims of wrongful death under North Carolina law against Saturn: a claim based on "Improper Loading and Securement" and a claim based on "Improper Hiring and Retention." (Compl. (Doc. 1-1) ¶¶ 33-45.) Plaintiff asserts four claims of wrongful death under North Carolina law against ATD based on the following theories: 1) "Improper Loading and Securement," 2) "Improper Hiring and Retention," 3) "Improper Training and Supervision," and 4) "Respondeat Superior." (Id. ¶¶ 51-71.) All six claims reference standards under FMCSA and FMCSR. (See id. ¶¶ 43, 48, 54-56, 62-64, 68.)

Defendants argue that these claims raise federal questions under the "artful pleading doctrine." (Defs. Saturn and ATD's Resp. (Doc. 29) at 3.) The artful pleading doctrine is an exception to the well-pleaded complaint rule and allows a court to "uphold removal even though no federal question appears on the face of the plaintiff's complaint." Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998). Notably, "artful pleading is not a separate removal doctrine, but rather refers to the manner in which some plaintiffs manage to plead [state law] claims that

- 18 -

are actually federal (because they are either completely preempted, or based entirely on substantial federal questions) under state law." In re Wireless Tel. Radio Frequency Prods. Liab. Litig., 327 F. Supp. 2d 554, 563 (D. Md. 2004).

Defendants appear to advance a complete preemption argument (although without using that exact term) — stating that "it is clear based off the Federal Motor Carrier Act and the [Federal Aviation Administration Authorization Act] [C]ongress has outlined and engulfed the area of commerce affecting brokers and freight forwarders." (Defs. Saturn and ATD's Resp. (Doc. 29) at 6.) Defendants additionally argue that Plaintiff's liability claims against them "turn on several substantial questions of federal law." (Id. at 4.)

### i. **Complete Preemption**

Under the doctrine of complete preemption, "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in state law terms, is in reality based on federal law," and can thus be properly removed to federal court. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003). There is a presumption against a finding of complete preemption, Lontz v. Tharp, 413 F.3d 435, 440 (4th Cir. 2005), and in describing the "exacting standards" that must be met to find

- 19 -

complete preemption, "the [Supreme] Court in <u>Beneficial</u>

emphasized that the preempting statute must not only create a

federal cause of action, but must also show that Congress

intended it to 'provide <u>the exclusive</u> cause of action' for

claims of overwhelming national interest." <u>Id.</u> at 441 (quoting

<u>Beneficial</u>, 539 U.S. at 9, 11.) Thus,

> [D]efendants seeking removal under the doctrine of
> complete preemption bear a significant burden. They
> must establish congressional intent to extinguish
> similar state claims by making the federal cause of
> action exclusive. And as [courts] must construe
> removal strictly, reasonable doubts must be resolved
> against the complete preemption basis for it.

<u>Id.</u> (citation omitted).

Defendants Saturn and ATD have not met this "significant

burden." <u>Id.</u> As explained <u>supra</u> section III.A.1.iii, there is

consensus among courts that neither FMCSA nor FMCSR provide any

private federal cause of action, let alone an exclusive cause of

action. Further, "[FMCSA] expressly allows state laws with 'the

same effect as' the federal regulations to be enforced. 49

U.S.C. § 31141(c)(2). This belies the claim of complete

preemption." <u>Lindsey v. WC Logistics, Inc.</u>, 586 F. Supp. 3d 983,

990 (N.D. Cal. 2022).

In support of their argument that federal law dominates

this field, Defendants cite to a provision of the Federal

Aviation Administration Authorization Act ("FAAAA"), which has

an express preemption provision regarding trucking industry regulation. (Defs. Saturn and ATD's Resp. (Doc. 29) at 5-6). This provision states that

> a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).

This court disagrees with Defendant's FAAAA argument. This statutory restriction on state regulation is expressly limited by 49 U.S.C. § 14501(c)(2)(A), which explains that "Paragraph (1) shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A). Congress was, therefore, clear that the FAAAA was not intended to extinguish state safety regulations as to motor vehicles. This finding is in line with the holdings of other courts in this circuit. See Est. of Wray by & through Wray v. Kennedy Bros. Logistics, Inc., No. 5:22-cv-70, 2022 WL 16550315, at *4 (E.D.N.C. Oct. 31, 2022) ("[T]he statutory text of the FAAAA contains no clear Congressional intent to engulf the entire area of personal injury and wrongful death claims involving transportation brokers and motor carriers."); Mann v.

- 21 -

*C.H. Robinson Worldwide, Inc.*, No. 7:16-cv-00104, 2017 WL 3191516, at *7-*8 (W.D. Va. Jul. 27, 2017) (unpublished) (finding that a personal injury suit for negligent hiring was not governed by the FAAAA, but even if it was, "it would not be preempted because it would fall within the 'safety regulatory' exception of paragraph (2)(A) of the preemption provision.")[10]

### ii. Substantial Questions of Federal Law

In the absence of complete preemption, Defendants must establish all four *Grable* factors to show that Plaintiff's state law claims turn on substantial questions of federal law. Defendants argue that Plaintiff's right to relief "necessarily depends on the resolution of a substantial question of federal law, i.e., the appropriate standard of care when selecting federally licensed motor carriers and duties owed by freight forwarders to the general public." (Defs. Saturn and ATD's Resp. (Doc. 29) at 6.)

Even assuming, without deciding, that Plaintiff's claims against Defendants Saturn and ATD necessarily raise federal questions under FMCSA and FMCSR, as explained *supra* section

---

[10] To the extent that Defendants intended to assert an argument of ordinary preemption — i.e. that federal law, not state law should govern this area, that argument must fail. Ordinary preemption is a defense, and federal defenses are not a basis for removal. *Lontz*, 413 F.3d 435, 440; see also *Burrell*, 918 F.3d at 386 ("[A] federal preemption defense, no matter how substantial, is not grounds for § 1331 jurisdiction.").

- 22 -

III.A.1.iii, FMCSA and FMSCR standards are not "substantial" questions of federal law and hearing them would disrupt the federal-state balance of judicial responsibilities. Defendants' argument that these questions are "substantial" because they concern highly regulated areas is unavailing. The mere fact that transportation is subject to expansive federal regulation is not enough to establish a substantial federal question. See Burrell, 918 F.3d at 386 ("[E]ven a strong interest in uniformity of results is not enough to make a federal question 'substantial' so that it may be heard in federal court.") Accordingly, Plaintiff's claims against Saturn and ATD do not "arise under federal law," Beneficial, 539 U.S. at 6, and this court does not have federal jurisdiction over them.

### 3. Plaintiff's Claims against Remaining Defendants: Global 1 and Robertson

Finally, Plaintiff asserts a series of claims against Defendant Global 1 and Defendant Robinson. These Defendants failed to file a response in opposition to Plaintiff's motion for remand. Yet, "[t]he burden of establishing federal jurisdiction is placed upon the party seeking removal." Mulcahey, 29 F.3d at 150; see also Burrell, 918 F.3d at 380. This court finds that in the absence of argument, neither Global 1 nor Robertson have met this burden. See also M.D.N.C. LR

- 23 -

7.3(k) ("If no response brief is filed . . . the motion will be considered and decided as an uncontested motion, and ordinarily will be granted without further notice.").

IV.  **CONCLUSION**

For the foregoing reasons, all of Plaintiff's claims will be remanded to state court as none raise a disputed and substantial question of federal law and therefore, this court does not have jurisdiction over them.

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand to State Court, (Doc. 24), is **GRANTED** and this case is **REMANDED** to the General Court of Justice, Superior Court Division, State of North Carolina, County of Guilford.

A Judgment remanding this action will be entered contemporaneously herewith.

This the 6th day of January, 2025.

_____
United States District Judge